1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   PAULA LYNN SCHENONE                    No.  2:18-cv-01655-AC

12                 Plaintiff,

13          v.                             ORDER

14   ANDREW M. SAUL, Commissioner of
     Social Security,
15
                 Defendant.
16

17

18          Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

19   ("Commissioner"), denying her application for disability insurance benefits ("DIB") under

20   Title II of the Social Security Act, 42 U.S.C. §§ 401-34, and for Supplemental Security Income

21   ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381-1383f.[1]

22          For the reasons that follow, the court will deny plaintiff's motion for summary judgment,

23   and grant the Commissioner's cross-motion for summary judgment.

24   _____

25   [1]  DIB is paid to disabled persons who have contributed to the Disability Insurance Program, and
     who suffer from a mental or physical disability.  42 U.S.C. § 423(a)(1); Bowen v. City of New
     York, 476 U.S. 467, 470 (1986).  SSI is paid to financially needy disabled persons.  42 U.S.C.
26   § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of
     Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 et seq., is the Supplemental
27   Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including
     children, whose income and assets fall below specified levels . . .").
28   (continued…)

                                              1

# I.  PROCEDURAL BACKGROUND

Plaintiff protectively applied for DIB and SSI on June 24, 2014.  Administrative Record ("AR") 286-97.[2]  The disability onset date for both applications was alleged to be January 12, 2010.  AR 286, 288.  The applications were disapproved initially and on reconsideration.  AR 125, 135, 137-38, 146, 154-56.  On January 17, 2017, ALJ Daniel G. Heely presided over the hearing on plaintiff's challenge to the disapprovals.  AR 93-114 (transcript).  Plaintiff was present and testified at the hearing.  AR 93-95.  Plaintiff was represented at the hearing by attorney Jeffrey Duarte, who continues to represent her in this appeal.  Id.

On May 22, 2017, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 62-73 (decision).  On July 25, 2017, plaintiff requested review by the Appeals Council.  AR 283, 366-79.  On April 13, 2018, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security.  AR 1-7 (decision).

Plaintiff filed this action on June 7, 2018.  ECF No. 1; see 42 U.S.C. §§ 405(g), 1383(c)(3).  The parties consented to the jurisdiction of the magistrate judge.  ECF Nos. 6, 7.  The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been briefed.  ECF Nos. 12 (plaintiff's summary judgment motion), 19 (Commissioner's summary judgment motion).

# II.  FACTUAL BACKGROUND

Plaintiff was born in 1955, and accordingly was 54 years old on the alleged disability onset date, making her a "person closely approaching advanced age" under the regulations.  AR 33; see 20 C.F.R §§ 404.1563(d), 416.963(d).  Plaintiff has a high school education; can communicate in English; and has past work experience as a salesperson, a beauty advisor, and an office worker.  AR 320-22.

////

////

---

[2] The AR is electronically filed at ECF Nos. 9.3 to 9.33 (AR 1–1463).

III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . .'" Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue , 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Secretary of HHS, 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

3

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.  RELEVANT LAW

Disability Insurance Benefits and Supplemental Security Income are available for every eligible individual who is "disabled."  42 U.S.C. §§ 423(a)(1)(E) (DIB), 1381a (SSI).  Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . . .'"  Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b) and 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

Id., §§ 404.1520(a)(4)(ii), (c) and 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Id., §§ 404.1520(a)(4)(iii), (d) and 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

4

Id., §§ 404.1520(a)(4)(iv), (e), (f) and 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id., §§ 404.1520(a)(4)(v), (g) and 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. §§ 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"), 416.912(a) (same); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V. THE ALJ's DECISION

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.
>
> 2. [Step 1] The claimant has not engaged in substantial gainful activity since January 12, 2010, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.). (Exhibits 6D; 8D)
>
> 3. [Step 2] The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine; and history of left ankle fracture in 2012, status post open reduction internal fixation. (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. [RFC] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: The claimant can sit for six hours of an 8-hour workday and stand and/or walk for six hours of an 8-hour workday, with normal breaks. She can lift and/or carry 10 pounds frequently and 20 pounds occasionally. The claimant can never climb ladders, ropes, and scaffolds, and can occasionally climb ramps and stairs. She can never work around hazards like moving dangerous machinery. She cannot operate motor vehicles.
>
> 6. [Step 4] The claimant is capable of performing past relevant work as a beauty culturist (cosmetologist). This work does not require the

5

performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from January 12, 2010, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

AR 64-73.

As noted, the ALJ concluded that plaintiff was "not disabled" under Sections 216(i) and 223(d) of Title II of the Act, 42 U.S.C. §§ 416(i), 423(d), and Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 73.

VI. ANALYSIS

Plaintiff argues that (1) the ALJ erred at Step Two in finding her mental impairments non-severe, (2) the Appeals Council erred by not considering evidence she submitted after the ALJ's decision, (3) the ALJ incorrectly determined plaintiff's RFC by (a) discounting an examining physician's opinion, and (b) failing to incorporate plaintiff's mental limitations, and (4) the ALJ improperly evaluated plaintiff's credibility. Plaintiff seeks reversal to immediately award benefits, or in the alternative, remand for another hearing and further evaluation. ECF No. 12 at 5-25.

A. Any Error at Step Two Was Harmless

Plaintiff argues that the ALJ should have found additional severe impairments of anxiety and/or depression at Step Two of the analysis. "Step two is merely a threshold determination meant to screen out weak claims." Buck v. Berryhill, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing Bowen v. Yuckert, 482 U.S. 137, 146–47 (1987). As plaintiff contends, the step-two severity inquiry is "a de minimis screening device to dispose of groundless claims." Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001), as amended on reh'g (Aug. 9, 2001). Once a claimant prevails at Step Two, by achieving a finding of some severe impairment, regardless of which condition is found to be severe, the ALJ proceeds with the sequential evaluation, considering at each step all other alleged impairments and symptoms that may impact the claimant's ability to work. See 42 U.S.C. § 423(d)(2)(B); Buck, 869 F.3d at 1049 ("The RFC . . . should be exactly the same regardless of whether certain impairments are considered 'severe' or not."). Thus, when

an ALJ finds at least one severe impairment and proceeds to consider evidence of limitations posed by all of a claimant's impairments at Step Four, there is no reversible error for a failure to find additional severe impairments at Step Two. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007); see also Buck, 869 F.3d at 1049 (where Step Two was decided in plaintiff's favor, he could not have been prejudiced and any error was therefore harmless).

Here, the ALJ decided Step Two in plaintiff's favor, finding that plaintiff had severe impairments of degenerative disc disease and history of left ankle fracture. AR 64. However, he found that because plaintiff's mental impairment caused no more than mild limitation in any of the mental functioning areas contained in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1), it was non-severe. AR 64-66; see 20 C.F.R. §§ 404.1520a(d)(1) ("If we rate the degrees of your [mental functional] limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities . . . ."), 416.920a(d)(1) (same). In making this finding, the ALJ carefully considered the evidence of plaintiff's mental impairments. AR 64-66. Specifically, the ALJ reasoned that while plaintiff testified to experiencing extreme anxiety and depression, and had been prescribed antidepressant medication, there was no evidence in the record of mental health counseling to substantiate plaintiff's alleged degree of psychiatric symptoms. AR 64-65. The ALJ reviewed the records from plaintiff's visits to various medical providers, and thoroughly addressed an April 6, 2017 report by the psychiatric evaluator for her workers' compensation claim, Dr. James Robbins, which provided the only opinion evidence regarding the degree of plaintiff's psychiatric symptoms. AR 65-66, 752-84. The ALJ further specified that, although he found plaintiff's mental functional limitations too mild for her anxiety or depression to qualify as a severe impairment, the mild limitations were not an RFC assessment, and that the subsequent RFC assessment "reflects the degree of limitation the undersigned has found in the . . . mental functional analysis." AR 66.

The ALJ proceeded to Steps Three and Four of the disability analysis, finding that plaintiff could perform light work with certain limitations. AR 67-71. In support of this finding, the ALJ noted that the medical evidence of record "contains very limited evidence of the

claimant's psychiatric conditions." AR 71. This statement, combined with the ALJ's earlier statement that the RFC reflected the degree of limitation found in the Step Two mental functional analysis, demonstrates that the ALJ properly considered all of plaintiff's conditions—including her mental impairments—before arriving at Step Four. Thus, the determination that plaintiff's anxiety and depression were non-severe at Step Two is inconsequential, and any error by the ALJ at Step Two would have been harmless. See Lewis, 498 F.3d at 911. Plaintiff's reliance on Edlund v. Massanari, 253 F.3d 1152, in which the Ninth Circuit reversed the Commissioner's denial of benefits because the ALJ applied an overly stringent standard at Step Two, does not change the court's conclusion. In Edlund, the ALJ's Step Two error was not harmless because, there, the ALJ failed to consider the effects of Edlund's mental impairment at subsequent steps of the evaluation process. See id. at 1160 ("[T]he ALJ failed to factor Edlund's mental impairments into her step 5 analysis . . . ."). In this case, the ALJ considered the evidence of plaintiff's mental impairments throughout the process. Thus, any error at Step Two does not provide a ground for reversal.

> B. Plaintiff Has Not Shown Good Cause for Submitting Additional Evidence to the Appeals Council

Next, plaintiff argues that the Appeals Council erred by failing to consider new medical evidence submitted after the ALJ hearing. While plaintiff submitted several new medical records to the Appeals Council post-hearing, in this appeal she only raises the Appeals Council's "fail[ure] to address" two additional reports from her orthopedic evaluator, Dr. Peter Mandell, dated July 19, 2017 and August 12, 2017; and one additional report from her psychiatric evaluator, Dr. Robbins, dated July 25, 2017. ECF No. 12 at 8-11, 21-23.

Plaintiff and her counsel appeared before the ALJ for the hearing on January 17, 2017. AR 95. Following the hearing, the ALJ held the record open for two weeks so that counsel could submit additional records. AR 96, 112. On May 22, 2017, the ALJ issued his unfavorable decision, which plaintiff requested that the Appeals Council review on July 25, 2017. AR 62-73, 283, 366-79. On August 30, 2017, the Appeals Council notified plaintiff that it had received her request for review and informed her that she could submit more information, including additional

evidence; however, the letter stated that, in order for the Appeals Council to consider any additional evidence, plaintiff "must show good cause for why [she] missed informing [the Appeals Council] about or submitting it earlier." AR 8.

On September 13, 2017, plaintiff submitted the additional reports in question to the Appeals Council. AR 13-58. On April 13, 2018, the Appeals Council denied plaintiff's request for review. AR 1-7. The Notice of Appeals Council Action acknowledged plaintiff's submission of additional evidence and stated: "We find that you did not have good cause for why you missed informing us about or submitting this evidence earlier. We did not consider and exhibit this evidence." AR 2.

In the instant appeal, plaintiff argues that the Appeals Council erred by failing to articulate the weight to be accorded to the doctors' opinions contained in their post-appeal reports. ECF No. 12 at 9, 11, 22. Plaintiff notes that Dr. Robbins' July 25, 2017 report "did not come into existence" until after the ALJ hearing. Id. at 9. She contends that there was good cause for the post-appeal submission of Dr. Mandell's reports because the evaluation on which the reports were based did not take place until July 17, 2017, and the reports were not received until after plaintiff's appeal to the Appeals Council. Id. at 21.

If a claimant is dissatisfied with an ALJ's decision, she may request that the Appeals Council review it. 20 C.F.R. §§ 404.967, 416.1467. "The Appeals Council may deny or dismiss the request for review, or it may grant the request and either issue a decision or remand the case to an administrative law judge." Id. Recently amended regulations govern the circumstances in which the Appeals Council will grant review. 20 C.F.R. §§ 404.970 (DIB) (effective January 17, 2017), 416.1470 (SSI) (effective January 17, 2017).[3] As of the date of the Appeals Council's denial of review in this case, and as relevant, the Appeals Council "will review a case if . . . [s]ubject to paragraph (b) of this section, the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a

_____

[3] Although there are slight differences between the regulations for the two benefit schemes, the differences are irrelevant for purposes of this appeal. Therefore, the court discusses only Section 404.970, governing requests to review a DIB denial.

reasonable probability that the additional evidence would change the outcome of the decision."

20 C.F.R. § 404.970(a)(5).  Paragraph (b) provides as follows:

> The Appeals Council will only consider additional evidence under paragraph (a)(5) of this section if you show good cause for not informing us about or submitting the evidence as described in § 404.935 because:
>
> (1) Our action misled you;
>
> (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or
>
> (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier. Examples include, but are not limited to:
>
>> (i) You were seriously ill, and your illness prevented you from contacting us in person, in writing, or through a friend, relative, or other person;
>>
>> (ii) There was a death or serious illness in your immediate family;
>>
>> (iii) Important records were destroyed or damaged by fire or other accidental cause;
>>
>> (iv) You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing; or
>>
>> (v) You received a hearing level decision on the record and the Appeals Council reviewed your decision.

20 C.F.R. § 404.970(b) (effective Jan. 17, 2017).[4]

In sum, under the current regulations, the Appeals Council "will only consider additional evidence" if a claimant "show[s] good cause" for not informing the Appeals Council about it, or submitting it, earlier.  Id.  Before the 2017 amendment, there was no "good cause" requirement for submitting new evidence to the Appeals Council.  See Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1162 (9th Cir. 2012) ("Claimants need not show 'good cause' before submitting new evidence to the Appeals Council.") (citing 20 C.F.R. § 404.970(b)).

---

[4] The amended regulations were made effective on January 17, 2017, and compliance was required by May 1, 2017.  81 Fed. Reg. 90,987 (Dec. 16, 2016).  Because the ALJ's decision in this case was issued on May 22, 2017, the amended regulations fully apply to plaintiff's subsequent request for review by the Appeals Council.

It is important to note that the word "considered" has become a term of art in Social Security cases.  The Ninth Circuit has distinguished between evidence the Appeals Council formally "considered" and made part of the administrative record, and therefore subject to judicial review (see Brewes, 682 F.3d at 1162 ("the final decision of the Commissioner includes the Appeals Council's denial of review, and the additional evidence considered by that body is 'evidence upon which the findings and decision complained of are based'") (emphasis added) (quoting 42 U.S.C. § 405(g)), and evidence the Appeals Council "looked at," which did not become part of the formal administrative record (see, e.g., Amor v. Berryhill, 743 F. App'x 145, 146 (9th Cir. 2018) ("here the Appeals Council only looked at the evidence, and determined it did not meet the standard for consideration," and therefore, "the new evidence did not become part of the record, and we may not consider it") (emphasis added)).  See Ruth v. Berryhill, 2017 WL 4855400, *8-9 (D. Or. Oct. 26, 2017) (discussing the difference between the Appeals Council "looking at" new evidence as opposed to "considering" it).

When the Appeals Council fails to "consider" additional evidence that satisfies the requirements of Section 404.970(b), remand to the ALJ is appropriate.  Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1233 (9th Cir. 2011).  However, it is the claimant's burden to satisfy the "good cause" requirement before the Appeals Council is required to review the case.  Norbert S. v. Berryhill, No. 6:18-CV-00218-AC, 2019 WL 2437457, at *10 (D. Or. June 11, 2019) ("[T]he regulation shifts the burden to the claimant to satisfy the 'good cause' requirements of section 404.970(b) . . . .").

Here, despite being notified that she would be required to show good cause for the failure to present additional evidence earlier, the administrative record does not contain evidence of any attempt to show good cause.  The Appeals Council's denial letter states that no good cause was found, and that the Appeals Council "did not consider" the additional reports.  AR 2.  Because the Appeals Council did not consider the additional evidence, it did not become part of the administrative record.  Thus, there was no error in failing to remand the case to the ALJ to weigh the new opinions.

////

To the extent plaintiff argues that the Appeals Council improperly found she did not have good cause for submitting the additional evidence, the court disagrees.  Plaintiff's only argument as to good cause is based on the timing of her evaluations by Dr. Robbins and Dr. Mandell. Although all three reports were completed after the date of the ALJ's decision, plaintiff has not shown why she and her counsel did not seek the assessments prior to the hearing.  See Jessie C. B. v. Berryhill, No. CV 18-25-BU-JCL, 2019 WL 1293604, at *5 (D. Mont. Mar. 21, 2019) (finding no good cause where plaintiff submitted RFC assessments completed after the ALJ's decision but did not show why the assessments were not sought before the hearing).

Plaintiff makes no attempt to demonstrate how she may have satisfied any of the categories of good cause provided in Section 404.970(b), such as being misled by the Appeals Council; being prevented by a physical, mental, educational, or linguistic limitation; or being prevented by "[s]ome other unusual, unexpected, or unavoidable circumstance beyond [her] control."  20 C.F.R. § 404.970(b)(1)-(3). Thus, the court will not disturb the Appeals Council's finding that plaintiff lacked good cause for her untimely submissions.  See Smith v. Berryhill, No. CV 1:18-337-CMC-SVH, 2019 WL 1549036, at *21 (D.S.C. Mar. 6, 2019) (stating that plaintiff may not use the fact that an assessment was dated after the ALJ's decision "to automatically qualify as a good cause exception because it undermines the purpose of the rule," and that the fact the records did not exist before the hearing "alone is not sufficient to meet the regulatory exception to the timely evidence submission requirement") (internal citations and quotation marks omitted), report and recommendation adopted, No. CV 1:18-337-CMC, 2019 WL 1533171 (D.S.C. Apr. 9, 2019).  If plaintiff wishes to have the Commissioner consider her medical records generated after the ALJ's decision, without demonstrating good cause for their untimely submission, she must file a new application for benefits.  A standard allowing every applicant for benefits to submit evidence created after the date of the hearing and thereby obtain reopening of the application for consideration of that evidence would create untenable practical administrative difficulties.

////

////

Plaintiff's additional argument that the Appeals Council erred by not remanding the case back to the ALJ and ordering that a medical advisor evaluate the newly submitted medical reports (ECF No. 12 at 11-12) is foreclosed by the above finding that plaintiff failed to show good cause.

C. The Commissioner Did Not Err in Failing to Assign a Psychiatric RFC Based on Dr. Robbins's July 2017 Report

In a related vein, plaintiff also argues that "the ALJ erred by failing to assign Plaintiff a psychiatric RFC" based on Dr. Robbins's July 25, 2017 report. ECF No. 12 at 23. Based on the contents of that report, plaintiff "requests that the Court identify a psychiatric RFC that she cannot communicate effectively, because of a thought disorder, and would not be able to respond rationally to any work situation." Id. at 25. Initially, the court notes that it would have been impossible for the ALJ to assign plaintiff an RFC incorporating opinions from a report that was not yet in existence at the time he issued his May 22, 2017 decision. In any event, because plaintiff failed to show good cause for the late submitted report, the court cannot find that the Commissioner erred in failing to remand the case for re-evaluation by the ALJ; nor can the court review the report and make a new RFC finding in the first instance because the report was never made part of the administrative record considered by the Appeals Council. See Amor, 743 F. App'x at 146.

D. The ALJ Properly Weighed the Opinion of Dr. Frank Fine

Next, plaintiff argues that the ALJ improperly discounted the opinion of Dr. Frank Fine, a Qualified Medical Examiner ("QME"), who examined her in January 2017 in connection with her workers' compensation claim. ECF No. 12 at 17-18. Plaintiff contends that Dr. Fine's opinion supported a more limited RFC of less-than-sedentary work, rather than the light work that the ALJ determined plaintiff could perform. Id. at 18. The court concludes that the ALJ did not err in assigning little weight to the opinion of Dr. Fine.

1. The Relevant Medical Evidence

Over the relevant period, in addition to the alleged psychological impairments discussed above, plaintiff sought treatment for neck (cervical spine) pain, lower back (lumbar) pain, and difficulties arising after surgery on her left ankle. In May 2012, plaintiff fell down a set of stairs

13

and fractured her left ankle. AR 433. She went to the emergency room where she underwent arthroscopy with debridement and had a metal plate and several screws implanted. AR 434-36. At her follow-up visits post-surgery, including a visit seven weeks out, she reported that she was "doing well" and denied any issues with numbness, tingling, or burning. Her x-rays showed good alignment of the fracture and positioning of the hardware. AR 439, 442-43.

The record indicates that plaintiff experienced back and neck pain as early as 2010 or 2011 (AR 664), but there was no documented treatment for it until an MRI of plaintiff's lumbar spine was ordered in May 2013. That MRI revealed, as relevant: "There is normal alignment of the lumbar spine. Intervertebral discs are normal to the L4-L5 level where there is mild desiccation and minimal degenerative retrolisthesis of L4 upon L5." AR 593. This finding was later corrected to refer to the L5-S1 level. AR 723.

On initial review of plaintiff's applications in September 2014, the State agency medical consultant opined that plaintiff could perform medium work, since she could frequently lift and/or carry 25 pounds, and occasionally 50 pounds; stand and/or walk for 6 hours of an 8-hour day; and sit for a total of 6 hours in an 8-hour day, without any other limitations. AR 122-23. This assessment was affirmed by a second State consultant on reconsideration. AR 142, 144.

In May 2015, another MRI of plaintiff's lumbar spine found a "marked narrowing of the L5-S1 disc space with a vacuum disc, consistent with chronic degenerative disc disease," but found the remainder of the disc spaces preserved, and noted was "[n]o significant change in chronic degenerative disc disease at L5-S1." AR 723. A September 2015 lumbar spine MRI confirmed a "Broad based posterior and right paracentral herniation of L5-S1 disc," measuring 13 mm; a "Diffuse bulge of L3-4 and L4-5 discs," measuring 3 mm; and a "Mild diffuse bulge of L2-3 disc," measuring 2 mm. AR 1462.

In October 2015, plaintiff's primary care physician, Dr. Samuel Ko, M.D., saw plaintiff to discuss the September 2015 MRI results. AR 1446-47. In his general examination, Dr. Ko noted, as relevant, that plaintiff had full range of motion in her neck and normal motor strength in her upper and lower extremities. Id. Dr. Ko diagnosed plaintiff with lumbosacral radiculopathy based on the MRI findings and referred her to the neurosurgery department. Id.

In December 2015, another MRI was performed, this time on plaintiff's cervical spine. AR 725. The report found "minimal narrowing" of the discs at C4-C5 and C5-C6, and "minimal bulge" of the C4-5, C5-6, and C6-7 discs. Id. At a December 10, 2015 follow-up visit to discuss these results, Dr. Ko again noted that plaintiff had full range of motion in her neck and normal motor strength in her upper and lower extremities. AR 733. He maintained the lumbosacral radiculopathy diagnosis, but his notes do not reflect any treatment plan related to plaintiff's neck pain. AR 733-34. Dr. Ko and other providers at the same hospital who saw plaintiff over February and March 2016 for various complaints all recorded that plaintiff had full range of motion in her neck and normal motor strength in her upper and lower extremities. AR 735, 739, 746.

In April 2016, plaintiff had her neurosurgery evaluation with Dr. Bjorn Lobo, M.D. AR 664-66. In his general examination, Dr. Lobo noted that plaintiff's motor strength was 5/5, her sensation was grossly intact, and her gait was within normal limits. AR 665. Dr. Lobo reviewed the December 2015 cervical spine MRI and the September 2015 lumbar spine MRI, stating that each revealed "mild disk [sic] bulges." Id. As to Impression and Plan, Dr. Lobo stated: "[Plaintiff's] MRIs do not show any significant cord compression or foraminal stenosis on her cervical MRI. Her lumbar MRI does not show any significant canal stenosis but does show some early arthritic changes with some mild foraminal stenosis at L3-4, L4-5, and L5-S1." Id. Dr. Lobo recommended that, "[g]iven her lack of any conservative measures," plaintiff try conservative management with physical therapy and possible trials of Neurontin and muscle relaxers with Dr. Ko. AR 666. Dr. Lobo concluded: "I do not believe the patient requires any surgery at this time given that her imaging findings only allow mild disease and likely decompression at these levels would not provide any significant relief for her." Id.

In August 2016, Registered Health Information Technician ("RHIT") Antoinette Tokunga completed a physical RFC questionnaire on behalf of Dr. Ko. AR 748-51. Tokunga identified diagnoses of lumbosacral radiculopathy, lower leg pain, and anxiety; and clinical findings of "mild disc buldge [sic]" at "C4-5, C5-6, C7, L4-5, L5-S1." AR 748. Tokunga did not fill in the sections of the form related to physical functional limitations, except to check a box indicating

that plaintiff would likely miss work more than four days per month due to her impairments or treatment. AR 749-51.

In October and November 2016, plaintiff visited Dr. Douglas Grant, M.D., a pain management specialist. AR 785-99. At the initial consultation in October 2016, Dr. Grant's physical examination revealed in relevant part:

> GAIT: The patient currently ambulates with a normal gait. She can perform single leg stance, heel-walking, toe-walking, and tandem gait.
>
> CERVICAL SPINE: Examination of the cervical spine reveals tenderness to palpation over the cervical paraspinal muscles. Cervical spine range of motion reveals flexion at 35 degrees, extension at 35 degrees, right rotation at 60 degrees, left rotation at 60 degrees, right lateral bend at 35 degrees, and left lateral bend at 35 degrees. There is pain at all arcs of motion.
>
> LUMBAR SPINE: Examination of the lumbar spine reveals tenderness to palpation over the lumbar paraspinal muscles. Lumbar spine range of motion reveals flexion at 40 degrees, extension at 10 degrees, right lateral bend at 10 degrees, and left lateral bend at 10 degrees. There is pain at all arcs of motion. Straight leg raise test and Patrick's test are negative.
>
> NEUROLOGICAL:
> . . .
> Motor: Motor strength is 5/5
> . . .
> Sensory: Sensory examination reveals diminished sensation to light touch over the bilateral feet; otherwise intact to light touch in the bilateral upper and lower extremities.

AR 788-89.

Dr. Grant's treatment plan included requesting a second opinion from an orthopedic spine surgeon; requesting authorization to perform diagnostic medial branch nerve blocks at C3, C4, and C5; considering lumbar epidural steroid injection, lumbar branch blocks, and chiropractic therapy; and requesting a repeat lumbar spine MRI. AR 790-91, 798. At her November 2016 visit to Dr. Grant's office, plaintiff complained of a lower backache and right hip pain, and the Review of Systems indicated no "neck pain" (a category that was not included in the Review of Systems at her previous visit). AR 793-94. The November 2016 physical exam notes were identical to the previous exam, and the visit notes were electronically signed by a nurse practitioner. AR 796, 799.

Finally, on January 4, 2017, plaintiff was examined by Dr. Frank Fine, D.C., M.D., the QME for her worker's compensation claim. Dr. Fine completed a physical RFC questionnaire and a written evaluation report. AR 801-09. In his written report, Dr. Fine summarized plaintiff's self-reported history, reviewed her medical records, and made the following relevant findings from his own physical examination:

> Her lower back exam reveals limited range. She can forward flex to only 20 degrees, extend to 5 degrees with back pain. There is sensory loss to light touch and pinprick in the left lateral calf and bottom of the foot by comparison to the right counterpart. . . . There is disuse atrophy in the left thigh by comparison to the right counterpart. She is 19 inches in circumference in the left thigh, 20 inches in circumference in the right thigh, 15 inches in circumference in the left calf, 16 inches in circumference in the right calf, citing disuse atrophy in the left lower extremity. . . .

> Examination of her cervical spine reveals very limited range of motion in all phases. She can rotate right to left 20 degrees, flex and extend to 5 degrees. . . .

> . . .

> Examination of the left ankle reveals multiple scars from prior surgery. Passive range of motion of the ankle is very painful in inversion. Active range is very limited in all planes in the left ankle. She can only dorsiflex to 10 degrees, plantarflex to 5 degrees, invert and evert only 5 degrees in the left ankle.

AR 803-04.

Taking his written report and RFC questionnaire in combination, Dr. Fine opined to the following functional limitations that plaintiff:

- could never lift more than 5-10 pounds, and could not push, pull, or lift more than 5-10 pounds with her arms at or above shoulder height;

- could not sit or stand for more than 20 minutes (according to the written report) or 1.25 hours (according to the RFC form) at a time;

- could not sit, stand, or walk for more than 2 hours total in an 8-hour day; needed to walk for 10 minutes every 15 minutes; and needed 5 minutes of rest every 20 minutes;

- could not walk more than one-half block without rest or severe pain, and could not walk over uneven ground

////

- could not (according to the written report) or could rarely (according to the RFC) climb stairs or ladders;

- could not repetitively kneel, squat, or bend (according to the written report), or could "rarely" twist, stoop/bend, and crouch/squat (according to the RFC form);

- could not perform pivoting maneuvers on her left lower extremity;

- could not repetitively grip, grasp, or torque with both hands (according to the written report), but similar questions were marked as "not applicable" on the RFC form; and

- would likely miss more than 4 days of work per month due to her impairments or treatment.

AR 804, 807-09. Overall, Dr. Fine stated that he "doubt[ed] that [plaintiff] could ever return to the workforce." AR 804.

        2.  Principals Governing the ALJ's Consideration of Medical Opinion Evidence

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996). "Those physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships. As such, the ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on clear and convincing reasons. Where such an opinion is contradicted, however, it may be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (internal citations omitted).

If a treating physician's opinion is not contradicted by another doctor, it may only be rejected for clear and convincing reasons supported by substantial evidence. Orn, 495 F.3d at 632 (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)). "The general rule is that conflicts in the evidence are to be resolved by the Secretary and that his determination must be upheld when the evidence is susceptible to one or more rational interpretations." Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). However, when the ALJ resolves conflicts by rejecting the opinion of an examining physician in favor of the conflicting opinion of another

physician, he must give "specific and legitimate reasons" for doing so. <u>Regennitter v. Comm'r.</u>, 166 F.3d 1294, 1298-99 (9th Cir. 1999) ("Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record.").

### 3. <u>Analysis</u>

As noted above, the ALJ assigned plaintiff an RFC of light work with the following limitations: she could sit for 6 hours of an 8-hour day, stand and/or walk for 6 hours of an 8-hour day, she could lift and/or carry 10 pounds frequently and 20 pounds occasionally; she could occasionally climb ramps and stairs; and she could never climb ladders, ropes, or scaffolds, or work around hazards, or operate motor vehicles.  AR 67.  In reaching this RFC determination, the ALJ evaluated the medical opinion evidence as follows.

The ALJ gave "substantial weight" to the opinions of the State agency medical consultants, reasoning that their assessment of medium work capability was consistent with the medical record which documented generally stable clinical findings for plaintiff's degenerative disc disease and left ankle fracture, including normal gait and negative straight leg raising and objective imaging that revealed mild to moderate degenerative changes to plaintiff's spine. AR 70.  The ALJ noted that he decreased plaintiff's RFC "to the extent that Dr. Fine's physical examination findings" could be corroborated with the medical record evidence.  <u>Id.</u>[5]  However, the ALJ ultimately gave "little weight" to Dr. Fine's opinions, reasoning as follows:

> Medical reports generated in the context of a workers' compensation claim are adversarial in nature. It is not uncommon to find that medical reports generated in connection with a workers' compensation claim are starkly inconsistent with the rest of the medical evidence of record, which is highly suggestive that the claimant's examining physician in the context of the workers' compensation is acting as an advocate for the claimant. This is the case with Dr. Fine's medical report and conclusions. His findings upon physical examination describe extreme limitations, which are not consistent with any objective or clinical evidence found anywhere else in the medical record. For example, Dr. Fine's clinical observations stand in stark contrast to the longitudinal progress notes documented by the claimant's primary provider, Dr. Samuel Ko, who

---

[5] The ALJ gave "little weight" to the opinions of RHIT Tokunga's opinion from the partially completed RFC, which contained no assessment of plaintiff's physical limitations.  AR 71.

19

> noted no significant abnormalities with the claimant's cervical spine; the claimant's consistently normal gait throughout the record; and with the objective evidence documenting mild to moderate degenerative disc disease in the claimant's cervical and lumbar spine.

AR 71.

In discounting the opinions of Dr. Fine, an examining physician, in favor of the opinions of non-examining State agency physicians, the ALJ was required to provide specific and legitimate reasons for doing so, supported by substantial evidence in the record. See Carmickle, 533 F.3d at 1164. The court finds that, while the ALJ's focus on the purpose of Dr. Fine's report was suspect, the ALJ ultimately satisfied this requirement.

An ALJ "may not disregard a . . . medical opinion simply because it was initially elicited in a state workers' compensation proceeding . . . ." Booth v. Barnhart, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002). "[I]n the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it." Reddick v. Chater, 157 F.3d 715, 726 (9th Cir. 1998). Evidence of a report's "consistency with other records, reports, or findings" can, however, "form a legitimate basis for evaluating the reliability of the report." Id.

To the extent the ALJ discounted Dr. Fine's opinions merely because they were offered in the context of a workers' compensation claim in which examining physicians *sometimes* inflate their medical findings for the claimant's benefit, he did not provide a legitimate reason. See De Alvarez v. Colvin, No. ED CV 15-1257-SP, 2016 WL 5745081, at *6 (C.D. Cal. Sept. 30, 2016) (stating that "an ALJ may not presume bias," and finding mere fact that doctors treated plaintiff in connection to a workers' compensation claim was not a specific and legitimate reason to give their opinions less weight). However, the court concludes that the ALJ's additional reliance on the extreme nature of Dr. Fine's opinions and their inconsistency with any other objective or clinical records adequately supported his decision to give Dr. Fine's opinions less weight.

The court finds ample support for the ALJ's conclusion that Dr. Fine's opinions were extreme and starkly inconsistent with the rest of the record. For example, Dr. Fine opined that

plaintiff could not walk more than half a city block; whereas every other provider, including Dr. Grant, who examined plaintiff only two months prior, found that she walked with a normal gait. AR 665, 789, 794, 796. Further, both Dr. Grant and the other providers consistently documented plaintiff has having full motor strength in her legs. AR 665, 730, 736, 743, 746, 789, 796, 1433, 1440, 1443, 1446, 1451. In regard to plaintiff's mobility, the court also finds Dr. Fine's opinion internally inconsistent, given his simultaneous assessment that plaintiff could not walk more than one half block and that she would need to walk for 10 minutes every 15 minutes. AR 807-08.

In addition, Dr. Fine's findings of extremely limited range of motion in plaintiff's lumbar and cervical spine lack support anywhere else in the record. With the exception of Dr. Grant, every other provider noted that plaintiff had full range of motion in her neck—although the court acknowledges that these assessments were generally given in the context of treating plaintiff for unrelated complaints. AR 736, 739, 746, 1433, 1438, 1440, 1443, 1446, 1451. However, even when compared with Dr. Grant's range-of-motion assessments, Dr. Fine's opinion can fairly be characterized as extreme. His findings on plaintiff's lumbar flexion and extension were twice as limited as the 40 degrees and 10 degrees that Dr. Grant assessed; he found 5 degrees for both cervical flexion and extension, as opposed to Dr. Grant's 35 degrees; and he found 20 degrees of cervical rotation, versus Dr. Grant's 60 degrees. AR 788-89, 803. Finally, the objective imaging of plaintiff's spine obtained periodically over 2013 to 2016 does not support Dr. Fine's assessment. The MRIs of plaintiff's lumbar spine consistently showed what both the radiologists and plaintiff's providers described as "mild" or "minimal" disc bulges. AR 593, 723, 725, 1463. Plaintiff argues that the 13 mm herniation cannot be viewed as mild when compared with the other 2-3 mm bulges, but in evaluating plaintiff for surgery, Dr. Lobo reviewed the September 2015 MRI documenting these measurements and nevertheless concluded that there was only "mild disease" and decompression would not benefit plaintiff. AR 665-66.

Accordingly, the ALJ sufficiently supported his decision to discount Dr. Fine's opinions in determining plaintiff's RFC.

////

E.  The ALJ Properly Discounted Plaintiff's Subjective Testimony

Finally, plaintiff argues that the ALJ improperly discounted her subjective testimony. Evaluating the credibility of a plaintiff's subjective testimony is a two-step process:  First, the ALJ must "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. . . . In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted).  Objective medical evidence of the pain or fatigue itself is not required.  Id. (internal citations omitted).  Second, if the ALJ does not find evidence of malingering, the ALJ may only reject the claimant's testimony by offering "specific, clear and convincing reasons for doing so."  Id. (internal citations omitted).  While an ALJ's credibility finding must be properly supported and sufficiently specific to ensure a reviewing court the ALJ did not "arbitrarily discredit" a claimant's subjective statements, an ALJ is also not "required to believe every allegation" of disability.  Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  So long as substantial evidence supports an ALJ's credibility finding, a court "may not engage in second-guessing."  Thomas, 278 F.3d at 958.

Here, the ALJ summarized plaintiff's testimony from the hearing and found that while her impairments could reasonably be expected to cause the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the other record evidence. AR 68.  The ALJ discounted plaintiff's testimony regarding her ankle pain and difficulty walking because the record indicated that her ankle medically stabilized after surgery.  Id.  Specifically, the ALJ  noted plaintiff's report that she was doing well and had no numbness or tingling directly following the surgery in 2012; and he noted Dr. Grant's October 2016 finding that plaintiff had full motor strength in her legs and normal gait.  Id.  Indeed, aside from Dr. Fine's properly discounted opinion, there is no other record evidence documenting plaintiff's ankle pain or mobility issues.  The court therefore finds the ALJ's reasoning clear and convincing with respect to this testimony.

Next, the ALJ discounted plaintiff's testimony regarding her neck and back pain due to degenerative disc disease because the objective evidence indicated that her condition was stable throughout the relevant period. AR 69. The ALJ described how each of plaintiff's MRIs revealed only mild disc bulges, how she was able to perform straight leg raises, and how her providers consistently documented full motor strength in her legs, a normal gait, and full range of motion in her neck. Id. After careful consideration of the record, the court concludes that the ALJ properly discounted plaintiff's testimony related to her neck and back impairments based on the mild objective findings and provider documentation that was inconsistent with her claimed limitations.

## VII. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 12), is DENIED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 19), is GRANTED;

4. The Clerk of the Court shall enter judgment for defendant, and close this case.

DATED: July 8, 2019.

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE